1

2                        IN THE UNITED STATES DISTRICT COURT

3                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5   MERCEDES NAVARRO,                           No. C 03-0603 SBA

6              Plaintiff,                        **ORDER**

7       v.                                       [Docket Nos. 293, 296, 330, 332]

8   GENERAL NUTRITION
    CORPORATION,
9
               Defendant.
10  _____/

11

12          This matter comes before the Court on Plaintiff's Motion for Attorney's Fees [Docket No. 293];

13  Defendant General Nutrition Corporation's ("GNC") Motion for Attorney's Fees [Docket No. 296]; Magistrate

14  Judge Chen's Report and Recommendation re Plaintiff's and Defendant's Motions for Attorney's Fees [Docket

15  No. 330]; and GNC's Motion for *De Novo* Determination of the Magistrate's Report and Recommendation

16  [Docket No. 332].

17          Having read and considered the arguments presented by the parties in the papers submitted to the

18  Court, as well as Magistrate Judge Chen's Report and Recommendation, the Court finds this matter

19  appropriate for resolution without a hearing.  The Court hereby GRANTS IN PART AND DENIES IN PART

20  GNC's Motion for *De Novo* Determination [Docket No. 332]; GRANTS IN PART AND DENIES IN PART

21  Plaintiff's Motion for Attorney's Fees [Docket No. 293]; and GRANTS IN PART AND DENIES IN PART

22  GNC's Motion for Attorney's Fees [Docket No. 296].

23                                      **BACKGROUND**

24  **A.      Factual Background[1]**

25          Plaintiff Mercedes Navarro ("Navarro" or "Plaintiff"), a California resident, was hired by General

26  Nutrition Corporation("GNC"), a Pennsylvania corporation, in March 1999.  In October 1999, she was

27  _____

28          [1] The following facts are taken from this Court's April 23, 2004 Order Granting in Part and Denying
    in Part Defendant's Motion for Summary Judgment.

*United States District Court*
*For the Northern District of California*

United States District Court

For the Northern District of California

promoted to manager of the GNC store in San Leandro, California.  On May 8, 2002, Plaintiff fell off a ladder while working at the San Leandro GNC store and suffered injuries.  After returning to work, however, Plaintiff continued to experience pain as a result of the fall.  Plaintiff thereafter took off an additional three weeks using accumulated sick days and vacation time.

On July 11, 2002, Plaintiff notified GNC's Human Relations department that she wanted to take additional leave under the Family Medical Leave Act of 1983 ("FMLA") and the California Family Rights Act ("CFRA").  On July 15, 2002, GNC's Human Relations department determined that, subject to certain conditions, Plaintiff provisionally met the eligibility requirements for leave.

Plaintiff returned to work on July 18 and 19, 2002.  On the second of the two days, Plaintiff's supervisor, Lorainne Crisp ("Crisp"), asked her to open the Castro Valley GNC store and manage its first shift the next morning, July 20, 2002, at 10:00 a.m.  That night, Plaintiff presented to the St. Rose Hospital emergency room with complaints of "anxiety" and "chronic pain."  The physician's report indicated that Plaintiff "should be able to return to work/school" on July 22, 2002.  Plaintiff was discharged at 1:45 a.m. on July 20, 2002 but did not return to work to open the Castro Valley GNC that day.

Plaintiff was immediately suspended, but given the opportunity to provide a doctor's note relating to her emergency room visit in order to avoid termination.  Plaintiff's employment was subsequently terminated on July 29, 2002.  Plaintiff contends that she did not receive notice of her termination until August 8, 2002.  Plaintiff also contends that she provided GNC with a medical certification that was signed by Dr. Deborah Greer on August 5, 2002.  The certification, which did not address Plaintiff's July 19, 2002 emergency room visit, indicated that Plaintiff had a "serious health condition" under the FMLA.  The certification further stated that Plaintiff suffered from continued right shoulder and back pain; that the condition commenced May 8, 2002; and that she would only be able to work intermittently through September 30, 2002.

**B.**   **Procedural Background**

On December 26, 2002, Plaintiff filed a complaint in Alameda County Superior Court against Defendants GNC and Crisp alleging: (1) wrongful termination in violation of public policy (against GNC); (2) violation of the FMLA (against GNC); (3) violation of the CFRA (against GNC); (4) unfair competition in

United States District Court
For the Northern District of California

violation of California Business and Professions Code § 17203 (against GNC); (5) violation of the California Fair Employment & Housing Act ("FEHA") for race discrimination and discrimination on the basis of medical condition (against GNC); and (6) intentional infliction of emotional distress (against GNC and Crisp).  GNC removed the action to this Court on February 12, 2003 based on federal question jurisdiction.  GNC also alleged in the Notice of Removal that the Court had diversity jurisdiction because Defendant Crisp[2] was a "sham" defendant.  Plaintiff did not oppose removal.

On March 18, 2003, this Court issued an Order setting the initial Case Management Conference for July 23, 2003.  On July 7, 2003, pursuant to the Court's Order, the parties filed a Joint Case Management Conference Statement.  However, on July 23, 2003, Plaintiff failed to appear for the telephonic Case Management Conference.  Accordingly, on July 29, 2003, the Court issued an Order to Show Cause why the action should not be dismissed.  Per the Court's instructions, Plaintiff's counsel, Mr. Hoffman, filed a Declaration on August 11, 2003 explaining Plaintiff's failure to initiate the telephone conference call.  The Court set aside the Order to Show Cause on August 21, 2003.

On October 16, 2003, a further Case Management Conference was held.  At the Case Management Conference, the Court set the case for a March 22, 2004 trial.  The parties were ordered to attend a pretrial conference on March 9, 2004.

On January 7, 2004, the parties attended a mediation but were unable to reach settlement.  On January 15, 2004, the parties attended a Settlement Conference with Magistrate Judge Chen but, again, were unable to reach settlement.

On January 16, 2004, GNC filed a motion requesting a continuance of the pretrial conference and trial date [*see* Docket No. 35].  In the motion, GNC stated that it had been attempting for months to informally resolve its dispute with Plaintiff and that, due to what it believed was a mutual desire between the parties to keep the costs of litigation low, it had not served Plaintiff with formal discovery requests but, instead, had voluntarily provided Plaintiff with a significant amount of information and documentary evidence relevant to her claims.  GNC also alleged that it had a reasonable expectation that the case would not proceed to trial and did

---

[2]Like Plaintiff, Crisp is a California resident.

United States District Court

For the Northern District of California

1   not realize until the January 7, 2004 mediation that the parties would not be able to reach settlement.  GNC

2   further alleged that Plaintiff had informed GNC that she was willing to extend the discovery deadline but was

3   unwilling to stipulate to a continuance of the trial date because she wanted to prevent GNC from being able to

4   file any dispositive pretrial motions.

5          On January 27, 2004, Plaintiff's counsel signed a stipulation agreeing that Plaintiff's claim for race

6   discrimination was baseless and that Plaintiff would no longer pursue that claim.  Plaintiff did not, however,

7   move to dismiss that claim.

8          On February 10, 2004, Plaintiff filed an untimely opposition to GNC's motion for a continuance of the

9   pretrial and trial dates [*see* Docket No. 42].  Plaintiff's opposition did not respond substantively to any of the

10  arguments set forth in GNC's motion.  However, in a supporting declaration, Plaintiff's counsel stated that

11  Plaintiff was opposed to the continuance because Plaintiff was "completely ready for trial" [*see* Docket No. 43].

12

13         On February 13, 2004, GNC filed a reply brief, in which it informed the Court that Plaintiff's counsel's

14  representation that Plaintiff was "completely ready for trial" was patently false, as Plaintiff had propounded a

15  significant amount of discovery requests on GNC that had not been completed, and had noticed eleven

16  depositions of GNC's current and former employees, nine of which had not yet taken place [*see* Docket No.

17  46].  GNC also stated that Plaintiff had not yet responded to GNC's written discovery requests, despite the

18  fact that the corresponding deadlines had passed, and that Plaintiff had failed to disclose the identity of her

19  purported expert(s).

20         On February 17, 2004, the Court granted GNC's motion and continued the trial date to May 17, 2004,

21  with the pretrial conference to take place on May 4, 2004.

22          On March 15, 2004, Defendants GNC and Crisp filed a Motion for Summary Judgment.  On March

23  24, 2004, GNC and Crisp filed a Motion to Shorten Time on Defendants' Motion for Summary Judgment, in

24  which Defendants requested a hearing date of April 6, 2004, so that the Motion for Summary Judgment could

25  be heard by the Court-ordered motion cut-off deadline.  On March 29, 2004, the Court granted Defendants'

26  Motion to Shorten Time, and ordered the parties to complete the briefing on Defendants' Motion for Summary

27

28

4

Judgment on or before April 13, 2004. On April 6, 2004, Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment which included an untimely cross-motion for summary adjudication.[3] The Court subsequently sustained Defendants' objection to Plaintiff's cross-motion and ordered it stricken from the record [*see* Docket No. 96].

On April 23, 2004, the Court issued an Order granting in part and denying in part Defendants' Motion for Summary Judgment. Pursuant to the Court's April 23, 2004 Order, Plaintiff's unfair competition and intentional infliction of emotional distress claims were dismissed. However, Defendants' Motion for Summary Judgment was denied with respect to Plaintiff's claims for: (1) FMLA/CFRA interference, (2) FMLA/CFRA retaliation, and (3) wrongful termination.[4] Also pursuant to the Court's April 23, 2004 Order, the parties were referred to Magistrate Judge Chen for a further Settlement Conference.

On April 29, 2004, the parties participated in a Settlement Conference with Magistrate Judge Chen. During the Settlement Conference, GNC offered Plaintiff $65,000 to settle the case. Plaintiff's counsel contends, however, that Judge Chen did not communicate the $65,000 offer to him. *See* Supp. Decl. of Michael Hoffman ("Supp. Hoffman Decl.") at ¶ 1. Since Plaintiff was not willing to settle for an amount below six figures, the Settlement Conference was terminated. *Id.*

Trial commenced on May 17, 2004. On May 26, 2004, Plaintiff filed a Motion to Amend the Complaint [Docket No. 251]. In the Motion to Amend, Plaintiff conceded that, although her complaint alleged that Defendants had violated FEHA by discriminating against her on the basis of a "medical condition," she had no evidence in support of that claim. Plaintiff contended, however, that the evidence at trial supported a claim under FEHA for discrimination on the basis of physical disability and requested leave to amend the complaint accordingly. The Court denied Plaintiff's Motion to Amend the Complaint on May 26, 2004.

On May 27, 2004, the jury returned to Court with a unanimous verdict in favor of Plaintiff on her cause of action for FMLA interference and awarded Plaintiff past economic loss damages in the amount of $60,500.

---

[3]Plaintiff also filed a Separate Statement of Undisputed Facts – in violation of this Court's standing orders – to which Defendants properly objected.

[4]Defendants did not move for summary judgment on Plaintiff's FEHA claims and therefore the Order did not address those claims.

**United States District Court**
For the Northern District of California

With respect to Plaintiff's claims for FMLA retaliation, violation of CFRA rights, CFRA rights retaliation, and wrongful discharge in violation of public policy, the jury returned a unanimous verdict for GNC.[5]

On June 17, 2004, Plaintiff filed a Bill of Costs in the amount of $15,945.12 and GNC filed a Bill of Costs in the amount of $64,400.00. Also on June 17, 2004, Plaintiff filed a Motion for Attorney's Fees, requesting an award of attorney's fees in the total amount of $687,647.87.

On June 18, 2004, GNC filed its Motion for Attorney's Fees, requesting an award of fees in the amount of $494,386.00.

On July 7, 2004, costs were taxed in the amount of $9,374.88 against GNC and $34,300.68 against Plaintiff.

On September 21, 2004, this Court referred Plaintiff's and GNC's Motions for Attorney's Fees to Magistrate Judge Chen for a report and recommendation.

On November 19, 2004, Magistrate Judge Chen issued his Report and Recommendation [Docket No. 330].

On December 7, 2004, GNC filed its Objections to Portions of Magistrate Judge Chen's Report and Recommendation and the instant Motion for *De Novo* Determination.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure ("Rule") 54(d)(2)(D), the Court may refer a motion for attorneys' fees to a magistrate judge under Rule 72(b) as a dispositive pretrial matter.  *See* Fed. R. Civ. P. 54(d)(2)(D).  Rule 72(b) allows a magistrate judge to "hear a pretrial matter dispositive of a claim or defense of a party." Fed. R. Civ. P. 72(b).  Rule 72(b) also governs the procedure for objecting to a magistrate judge's determination of a dispositive pretrial matter:

> A party objecting to the recommended disposition of the matter shall promptly arrange for the transcription of the record, or portions of it as all parties may agree upon or the magistrate judge deems sufficient, unless the district judge otherwise directs.  Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  The district judge to whom the case is assigned shall make a *de novo* determination upon the record, or after

---

[5]Prior to the commencement of trial, Plaintiff agreed to dismiss Defendant Crisp from the case.

United States District Court
For the Northern District of California

1   additional evidence, of any portion of the magistrate judge's disposition to which specific

2   written objection has been made in accordance with this rule.  The district judge may accept,
    reject, or modify the recommended decision, receive further evidence, or recommit the matter

3   to the magistrate judge with instructions.

4   Fed. R. Civ. P. 72(b).

5          Northern District Civil Local Rule 72-3 requires that an objection filed pursuant to Rule 72(b) "must

6   be accompanied by a motion for *de novo* determination, specifically identify the portions of the Magistrate

7   Judge's findings, recommendation or report to which objection is made and the reasons and authority therefor."

8   N.D. Civil L.R. 72-3(a).  In addition, the Court's review and determination of objections filed pursuant to Civil

9   Local Rule 72-3(a) shall be upon the record of the proceedings before the Magistrate, except when the Court

10  grants a motion for expansion or addition to the record or for an evidentiary hearing.  *Id.* at 72-3(c).

11         The Court evaluating a Magistrate Judge's recommendation may adopt those portions of the

12  recommendation to which no specific objection is made, as long as those sections are not clearly erroneous.

13  28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(b).  However, "[t]he district court cannot simply 'concur' in the

14  magistrate's findings, . . . it must conduct its own review in order to adopt the recommendations." *McCombs*

15  *v. Meijer, Inc.*, 2005 U.S. App. LEXIS 949 *31 (6th Cir. 2005) (citing *Massey v. City of Ferndale*, 7 F.

16  3d 506, 510-11 (6th Cir. 1993)).  Further, in computing an award, the Court should provide a "detailed

17  account of how it arrives at appropriate figures for 'the number of hours reasonably expended' and 'a

18  reasonable hourly rate.'"  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  The Court must also conduct

19  a *de novo* review of all of the Magistrate Judge's conclusions of law.  *See Barilla v. Ervin*, 886 F.2d 1514,

20  1518 (9th Cir. 1989).

21                                    **ANALYSIS**

22  **I.     Plaintiff's Motion for Attorney's Fees**

23         In Plaintiff's Motion for Attorney's Fees, Plaintiff requests an award of attorney's fees in the amount of

24  $687,647.87, based on a lodestar value of $343,823.81 and a multiplier of 2.0.  Plaintiff's Motion is premised

25

26

27

28                                        7

on the fact that Plaintiff was the prevailing party on her FMLA interference claim.[6]

In its opposition, GNC argues that the Court should deny Plaintiff's Motion in its entirety, or, alternatively, award fees and costs in the total amount of $6,518.50. In support of this argument, GNC sets forth the following points: (1) Plaintiff's counsel's requested rates are not in line with those prevailing in the community for lawyers of comparable skill and reputation; (2) Plaintiff's counsel's requested hours should be reduced to exclude hours billed by Mr. Rosenthal, since Plaintiff did not provide the Court with any documentation concerning Mr. Rosenthal or his background and did not provide a statement of the actual hours billed by Mr. Rosenthal; (3) Plaintiff's counsel's requested hours should be reduced to exclude hours based on uncooperative and contentious conduct; (4) Plaintiff's counsel's requested hours should be reduced to exclude time spent pursuing frivolous claims; (5) Plaintiff's counsel's requested hours should be reduced to account for the fact that Plaintiff rejected a settlement offer that was more favorable than the award she received from the jury; (6) Plaintiff's requested paralegal hours should be reduced to exclude time spent on purely clerical work; (7) Plaintiff's requested 2.0 multiplier is unfounded; (8) Plaintiff's lodestar should be reduced to account for Plaintiff's limited success; and (9) Plaintiff's total award should be reduced to exclude certain costs already included in Plaintiff's Bill of Costs. GNC also argues that any award of attorney's fees to Plaintiff should be offset by GNC's attorney's fees award.

In his Report and Recommendation, Magistrate Judge Chen rejects most of GNC's arguments[7] and recommends a total lodestar of $320,031.00. In establishing the lodestar, Judge Chen finds Plaintiff's

---

[6]The FMLA specifically provides that "[t]he court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3).

[7]The sole objection that Judge Chen recommends sustaining is GNC's objection to Plaintiff's inclusion in the lodestar of the time her attorneys spent litigating her FEHA and unfair competition claims. Judge Chen agrees with GNC that the FEHA and unfair competition claims are sufficiently unrelated to the successful FMLA claim and that any time spent on such claims should be excluded. However, Judge Chen concludes that Plaintiff does not appear to have spent any time litigating the FEHA claims and therefore does not recommend adjusting the lodestar to account for the FEHA claims.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

requested hourly rates to be reasonable and, with a few minor modifications,[8] finds Plaintiff's purported hours to be reasonable as well. However, because Plaintiff achieved limited success in the litigation, Judge Chen recommends a thirty-five percent (35%) reduction to the lodestar. Judge Chen also recommends an award of costs in the gross amount of $6,550.24, reduced by thirty-five percent, for a total cost award of $4,257.66. The total fees and costs award recommended is therefore $212,277.80.

GNC objects to the amount of fees awarded to Plaintiff in general and, specifically, contends that Judge Chen erred by: (1) failing to reduce Plaintiff's lodestar for fees pertaining to the unsuccessful and unrelated FEHA claims; and (2) failing to adjust Plaintiff's lodestar by a greater amount to account for Plaintiff's limited success in the litigation.

Having reviewed the record in its entirety, including Judge Chen's Report and Recommendation, the Court finds that only some of Judge Chen's recommendations should be adopted by the Court. Judge Chen's specific recommendations, and the Court's own findings and conclusions, are detailed below.

**A.     Reasonable Hourly Rate**

The first step in the lodestar analysis is to establish a reasonable hourly rate for Plaintiff's attorneys and paralegal staff. Determining a reasonable hourly rate is a critical inquiry. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). The Court must consider several factors, including the experience, skill and reputation of the applicant, and must look to the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1985). The Court may not merely refer to the rates actually charged to the prevailing party. *Id.* at 1210-11. Instead, the reasonable hourly rate is based on the "market rate" for the services rendered. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir.1996). It is the applicant's burden to produce evidence, other than the declarations of interested counsel, that "the requested rates are in line with those prevailing in the community

---

[8]Specifically, Judge Chen recommends excluding from the lodestar a time entry of 0.3 hours relating to Plaintiff's pursuit of her unfair competition claim. He also recommends reducing Plaintiff's requested paralegal hours by approximately fifty percent to account for certain non-billable clerical work performed by Plaintiff's legal "apprentice," Geraldine Camp.

for similar services of lawyers of reasonably comparable skill and reputation." *Jordan*, 815 F.2d at 1263.  In addition, in figuring a reasonable fee, the Court should consider the outcome of the action, the customary fees, and the novelty or difficulty of the issues presented.  *Chalmers*, 796 F.2d at 1211 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975)).  Once counsel has established the reasonableness of his or her rate, *then* the burden shifts to the opposing party to demonstrate why the rate should be lower.  *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir.1999).

Plaintiff requests that her attorneys be awarded fees at the following hourly rates: (1) $325 per hour for attorney Michael Hoffman; (2) $300 per hour for attorney Josh Rosenthal; (3) $285 per hour for attorney Marilyn Minger; (4) $65 per hour for paralegal Katie Youngmark; and (5) $65 per hour for apprentice Geraldine Camp.  GNC objects to the hourly rates requested for Mr. Hoffman and Ms. Minger on the grounds that they are unreasonable in light of Mr. Hoffman and Ms. Minger's demonstrated lack of skill in the litigation. GNC contends that an hourly rate of $150 for Mr. Hoffman and Ms. Minger is more in line with their demonstrated skill and experience. GNC also objects to the requested hourly rate for Mr. Rosenthal on the grounds that documentation relating to Mr. Rosenthal's hours has not been provided.  The requested rates for Ms. Youngmark and Ms. Camp are unopposed.

### 1.     Mr. Hoffman's Hourly Rate

Plaintiff's "proof" of the reasonableness of Mr. Hoffman's $325 hourly rate is primarily premised on Mr. Hoffman's own declaration, which establishes only that: (1) Mr. Hoffman was the lead attorney of record during the trial; (2) Mr. Hoffman received a degree from Golden Gate University School of Law in 1991; (3) Mr. Hoffman was admitted to the California Bar in 1991;  and (4) for the past ten years, Mr. Hoffman has spent the "majority" of his time "representing employees in discrimination and other employment litigation." *See* June 16, 2004 Declaration of R. Michael Hoffman ("Hoffman Declaration").  Plaintiff has also submitted affidavits from Michael Rubin and Brad Seligman, local attorneys with roughly twenty-five years of trial experience, who contend that the applicable market rate for attorneys in the Bay Area with approximately ten years experience

United States District Court

For the Northern District of California

1  is either at or above $325 per hour.[9]  *See* Decl. of Michael Rubin ("Rubin Decl.") at ¶ 4; Decl. of Brad

2  Seligman ("Seligman Decl.") at ¶ 9.[10]  During the proceedings before Judge Chen, Plaintiff also provided docket

3  reports showing that, in the entirety of his career, Mr. Hoffman has served as the lead counsel of record in ten

4  federal cases, five of which proceeded to trial.  *See* Pl's Req. for Jud. Not. at Ex. A at p.2.

5       Based on Plaintiff's evidence, Judge Chen recommends a finding that an hourly rate of $325 for Mr.

6  Hoffman is reasonable.  In reaching this conclusion, however, Judge Chen notes that Plaintiff's evidence is

7  probative of Mr. Hoffman's length of experience only, and does not actually speak to whether Mr. Hoffman's

8  reputation or skill warrants such a fee.  Judge Chen's recommendation is also largely based on his finding that

9  GNC did not produce enough specific evidence to refute the reasonableness of Mr. Hoffman's fee.[11]  He

10  acknowledges, however, that "[a]n argument could be made that Mr. Hoffman's alleged misconduct [during

11  the litigation] might indicate a lack of skill, which would be a basis for a reduction of his reasonable market

12  rate."

13       Having considered the same evidence, the Court finds that it does not agree with Judge Chen's

14  conclusion that Plaintiff has met her initial burden of proof with respect to the reasonableness of Mr. Hoffman's

15  fee.  First, it is clearly established in the Ninth Circuit that it is the *applicant's* burden to produce specific

16  evidence, other than the declarations of interested counsel, that the requested rates are in line with those

17  prevailing in the community for lawyers with comparable *skill* and *reputation*.  *Jordan*, 815 F.2d at 1263.

18  The burden does not shift to GNC to produce rebuttal evidence unless and until Plaintiff meets her initial

19  

20  

21      [9] Specifically, Mr. Rubin believes Mr. Hoffman's rate to be "comparable to the billing rates for other California attorneys with comparable experience" and Mr. Seligman believes Mr. Hoffman's rate to be "at or

22  below the prevailing rates for attorneys of similar experience and length of practice in such cases in this area." Rubin Decl. at ¶ 4; Seligman Decl. at ¶ 9.

23      [10]The Rubin Declaration and Seligman Declaration were not part of Plaintiff's moving papers, but were

24  filed pursuant to Judge Chen's September 30, 2004 Order requesting supplemental briefing.

25      [11] Judge Chen does acknowledge that GNC produced evidence that its lead trial attorneys charged rates *lower* than Mr. Hoffman during trial.  *See* Opp. at 17 (noting that GNC's lead counsel, Mr. Keller and

26  Mr. Holland, charged an hourly rate of $275 and $225, respectively, during trial).  Notably, Mr. Keller has over twenty-five years of litigation experience and has tried over sixty cases to verdict in federal and state

27  courts.  Decl. of G. Daniel Newland I.S.O. GNC's Motion for Attorneys' Fees ("Newland Decl.") at ¶ 11.

28

**United States District Court**
For the Northern District of California

1    burden.  *Spegon*, 175 F.3d at 554.

2        Here, the only evidence Plaintiff has produced concerning the reasonableness of Mr. Hoffman's rate

3    are the affidavits of Mr. Rubin and Mr. Seligman and the docket reports that chronicle Mr. Hoffman's fairly

4    scant federal trial experience.  As Judge Chen correctly notes, however, Mr. Rubin and Mr. Seligman's

5    affidavits are devoid of any evidence regarding Mr. Hoffman's skill and reputation.  In fact, it is not clear

6    whether Mr. Rubin or Mr. Seligman are even familiar with Mr. Hoffman, or whether they are merely expressing

7    generalized opinions regarding the market rate for attorneys with ten years of litigation experience.  As for Mr.

8    Hoffman's trial experience, the docket sheets actually undermine Plaintiff's assertion that a rate of $325 per hour

9    is a reasonable fee for Mr. Hoffman.  Notably, in the most recent case Mr. Hoffman litigated in federal court

10   before this one, which was in 2000, Mr. Hoffman's client prevailed on summary judgment, but Mr. Hoffman,

11   personally, was sanctioned and ordered to reimburse the defendants' attorneys' fees and costs.  *See* Pl's Req.

12   for Jud. Not. at Ex. A. at p. 51.  Further, Mr. Hoffman does not appear to have been victorious in any of the

13   other federal cases he has tried to verdict, save one case that settled shortly after the verdict was rendered.

14   *See* Pl's Req. for Jud. Not. at Ex. A. at pp. 2-3.  Because Plaintiff's evidence does not sufficiently establish that

15   an hourly rate of $325 for Mr. Hoffman is reasonable, the Court must make its own determination regarding

16   the appropriate fee.

17       Based on the Court's observation of Mr. Hoffman's skill and experience in this litigation, the Court finds

18   that Mr. Hoffman's overall performance in the underlying litigation was not commensurate with other attorneys

19   of his experience or length of practice who have appeared before this Court.  *See Ackerman v. Western*

20   *Electric Co., Inc.*, 643 F. Supp. 836, 867 (N. D. Cal. 1986) (finding a rate of $95 per hour to be reasonable

21   for an attorney whose performance was "erratic" and "below the standard for experienced lawyers.").

22   Specifically, the Court notes that: (1) Mr. Hoffman was ordered to show cause by this Court after failing to

23   appear for the initial Case Management Conference[12]; (2) Mr. Hoffman waited until trial to dismiss his client's

24   race discrimination claim from the lawsuit even though he admits that he was aware, from the time the

25

26

27       [12]*See* Docket No. 12 (Order to Show Cause).

28                                              12

United States District Court

For the Northern District of California

1   Complaint was filed, that the claim was groundless[13]; (3) Mr. Hoffman did not dismiss Defendant Crisp from

2   the lawsuit even after conceding in correspondence with Defendants that she was not a proper defendant in the

3   case[14]; (4) Mr. Hoffman submitted a sworn declaration in opposition to Defendants' motion to continue the

4   pretrial and trial dates that included false statements regarding his client's readiness for trial[15]; (5) Mr. Hoffman

5   filed an untimely cross-motion for summary judgment in violation of the Civil Local Rules[16]; (6) Mr. Hoffman

6   repeatedly missed filing deadlines and was admonished during the pretrial conference for failing to file certain

7   papers by the Court-ordered deadline[17]; (7) Mr. Hoffman was admonished by this Court for speaking to a

8   GNC witness during a break in her testimony at trial[18]; and (8) Mr. Hoffman admitted during the proceedings

9   before Judge Chen that Plaintiff's failure to obtain all of the relief she may have been entitled to was due to

10  certain errors he committed while drafting the jury verdict form.[19]

11          Again, based on this Court's own observations of Mr. Hoffman's conduct during the underlying

12  proceedings, the Court finds that an hourly rate of $325 per hour is too high, particularly in light of the fact that

13  Mr. Hoffman's opposing counsel in this matter, Mr. Keller – who has been litigating for over twenty-five years

14  and has tried over sixty cases to verdict – charged his client $275 per hour for work performed on the same

15

16

17          [13]*See* October 27, 2004 Tr. at 30:11-31-21 (Mr. Hoffman: "The first time I talked to [GNC's counsel] on the phone . . . I said, race is not part of this case in any way, shape or form, whatsoever . . . . The plaintiff felt that, as a Filipino woman, she was not given an FMLA, and she insisted . . . that we put that claim therein.")

18

19          [14]*See* Supp. Decl. of Keller at ¶¶ 11-13.

20          [15]*See* Docket No. 43 (stating on February 10, 2004 that Plaintiff was "completely ready for trial.")

21          [16]*See* Docket No. 96 (noting that Plaintiff's cross-motion for summary judgment violated the Federal Rules of Civil Procedure and Civil Local Rule No. 7-2).

22

23          [17]*See, e.g.,* May 11, 2004 Tr. at 9:4-7 (Court: "[F]irst of all, Mr. Hoffman . . . my Order ordered you to file your opposition to the motion by noon on May 4th, and you filed your opposition on May 4th at 6:30.")

24

25          [18]*See* Supp. Keller Decl. at ¶¶ 23-26.

26          [19]*See* October 27, 2004 Tr. at 11:5-16 (Mr. Hoffman: "I mean . . . I was going through the jury verdict and going through the instructions, and I didn't realize that an FMLA should have been incorporated into our CFRA verdict form . . . and that's why she did not get anything above - - beyond the total amount of back pay that she sought.").

27

28                                                        13

United States District Court

For the Northern District of California

1   case.[20]  However, the Court also finds that GNC's suggested rate of $150 is too low and is not supported by

2   any evidence or statistics.  In the absence of any specific guidance from the parties, the Court relies on its own

3   judgment and experience in determining fees, as well as a recent order issued by Judge Walker in *Yahoo! Inc.*

4   *v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1189 (N. D. Cal. 2004), which sets forth a comprehensive

5   examination of the relevant statistical data and finds that the average market rate for attorneys practicing in San

6   Francisco is $190 per hour.  *See id.* at 1189 (analyzing statistics from the United States Census Bureau and

7   the Bureau of Labor Statistics).  Based on this Court's observations, and its assessment of Mr. Hoffman's skills,

8   the Court finds that a rate of $190 per hour for Mr. Hoffman is appropriate.  Accordingly, Mr. Hoffman shall

9   be compensated at a rate of $190 per hour.

10                              **2.     Mr. Rosenthal's Hourly Rate**

11           With respect to Mr. Rosenthal's purported hourly rate, the Court notes that Plaintiff did not file *any*

12   supporting documentation concerning Mr. Rosenthal in support of her Motion for Attorney's Fees.  Although

13   Plaintiff submitted the Supplemental Declaration of Michael Hoffman in response to GNC's opposition, this

14   document merely provides that: (1) Mr. Rosenthal was admitted to the California State Bar in 1997; and (2)

15   Mr. Rosenthal is employed with Medlin Real Estate Law Group in Oakland.  The Court finds that this evidence

16   falls substantially short of Plaintiff's requisite burden of proof.  *Jordan*, 815 F.2d at 1263 (applicant's burden

17   is to produce evidence, *other than* the declarations of interested counsel, that the requested rates are

18   reasonable).  Notably, not only has Plaintiff failed to provide a declaration from Mr. Rosenthal *himself*, but

19   Plaintiff does not provide a *curriculum vitae* for Mr. Rosenthal or any other information regarding Mr.

20   Rosenthal's education, litigation experience, skill, or reputation.  In fact, it is not even clear from Mr. Hoffman's

21   Supplemental Declaration whether Mr. Rosenthal actually practices civil litigation or has any experience with

22   employment litigation in particular.  Accordingly, the Court does not agree with Judge Chen's conclusion that

23   $275 per hour is a reasonable rate for Mr. Rosenthal.  Since it is clear that Mr. Rosenthal has less experience

24

25           [20]This fact is helpful to the Court in assessing the reasonableness of the rate in light of the novelty or
     difficulty of the issues presented.  *Chalmers*, 796 F.2d at 1211.  The fact that GNC's counsel discounted their
26   rates for this litigation suggests that this case was not particularly difficult or novel, which conclusion is further
     supported by the fact that both parties repeatedly stated throughout the litigation that the case was relatively
27   simple and straightforward.

28                                              14

1  than Mr. Hoffman and had a very limited role in the underlying proceedings, and since there is no basis for the

2  Court to conclude that Mr. Rosenthal has the requisite experience to support an hourly rate of $275, the Court

3  finds that Mr. Rosenthal shall be compensated at an hourly rate of $150.

### 3.  Ms. Minger's Hourly Rate

5  With respect to Ms. Minger, Plaintiff has established: (1) that Ms. Minger earned a Bachelor of Arts

6  in applied mathematics in 1998; (2) that Ms. Minger graduated from the University of California at Davis Martin

7  Luther King Junior School of Law in 1991; (3) that Ms. Minger was admitted to the California bar in 1991;

8  (4) that Ms. Minger is a member of all of the courts of the State of California and the United States District

9  Court for the Northern District of California; (5) that Ms. Minger has spent about fifty percent of her time in

10  civil litigation since 1991, but only a year in discrimination and employment litigation; and (5) that Mr. Rubin

11  believes that Ms. Minger's rate is an accurate market rate for lawyers with her experience and qualifications.

12  Based on this evidence, Judge Chen concludes that an hourly rate of $285 is reasonable.  However, Judge

13  Chen expresses some reservation with regard to whether Plaintiff has sufficiently established that Ms. Minger

14  actually has the same level of "skill" and "experience" as other attorneys typically compensated at this hourly

15  rate.

16  Again, the fact that Plaintiff's evidence is silent with respect to Ms. Minger's skill and reputation does

17  not suffice to meet Plaintiff's burden of proof.  Accordingly, the Court must make its own determination

18  regarding the appropriate rate for Ms. Minger's services.  Based on the evidence the Court has been provided,

19  the Court finds that Ms. Minger is less experienced than Mr. Hoffman.  However, it is not clear that she is more

20  experienced or skilled than Mr. Rosenthal.  Accordingly, the Court finds that an hourly rate of $150 for Ms.

21  Minger is reasonable and appropriate.

### 4.  The Paralegal's Hourly Rates

23  With respect to Ms. Camp, Plaintiff has provided the following information: (1) that Ms. Camp is

24  certified by the California State Commissioner of Bar Examiners to study law as an apprentice; (2) that Ms.

25  Camp attended St. John Fisher College in Rochester, New York from 1990 to 1994; (3) that Ms. Camp

26  worked for two years as an executive assistant for a real estate development firm in San Francisco; and (4) that

27

28  15

United States District Court

For the Northern District of California

1  Ms. Camp has worked for Mr. Hoffman since January 2001.  With respect to Ms. Youngmark, Plaintiff

2  provides no relevant information, other than a statement from Mr. Hoffman that Ms. Youngmark is an

3  "experienced paralegal."  This evidence is also insufficient to meet Plaintiff's burden of proof.  However, as

4  Judge Chen correctly notes, Plaintiff's requested rate of $65 per hour is unopposed by GNC.  Further, as

5  Judge Chen notes, $65 per hour is actually below the prevailing market rate.  *See* Report and Recommendation

6  ("R&R") at 8.  Accordingly, the Court hereby adopts Judge Chen's recommendation and finds that Ms. Camp

7  and Ms. Youngmark shall be compensated at a rate of $65 per hour.

8      **B.      Reasonable Hours**

9      The next step in calculating the lodestar is for the Court to determine the number of hours reasonably

10  expended in the litigation.  *Chalmers*, 796 F.2d at 1210.  The applicant must justify her claim by submitting

11  *detailed* time records. *U.S. v. City and County of San Francisco*, 699 F. Supp. 762 (N.D. Cal. 1988).  The

12  documentation submitted should be sufficient to satisfy the Court that the hours expended were actual,

13  non-duplicative and reasonable, and to apprise the Court of the nature of the activity and the claim on which

14  the hours were spent.  *See Hensley*, 461 U.S. at 437; *Wehr v. Burroughs Corp.*, 477 F.Supp. 1012,

15  1016-18 (E.D.Pa.1979).  Further, a fee applicant must show that she exercised "billing judgment" in the

16  preparation of the attorney's fee application. *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (en banc).

17  "Hours not properly billed to one's client are not properly billed to one's adversary . . . ." *Copeland*, 641 F.2d

18  at 891.  Only hours found to have been reasonably expended may be allowed.  *Hensley*, 461 U.S. at 434

19  (holding that a plaintiff is not entitled to an award of attorney's fees for hours which were duplicative,

20  unproductive, excessive or otherwise unnecessary).  After reviewing the applicant's records, the Court may

21  adjust the hours downward if it believes the documentation to be inadequate, if it finds that the hours are

22  duplicative, or if it finds that the hours are excessive or unnecessary.  *Copeland*, 641 F.2d at 891, 891 n. 18.

23  Additionally, the Court should not include time spent litigating claims upon which the party seeking the fee did

24  not ultimately prevail if the Court is able to determine that the unsuccessful claims are truly "fractionable" from

25  the successful claims.  *Id.*

26      When an attorney is not able to provide the Court with contemporaneous billing records, reconstruction

27

28      16

may be used as a basis for an award of attorney's fees.  *See City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1102-1103 (2d Cir.1977); *United States v. State of Washington*, 626 F.Supp. 1405, 1446, 1516 (W.D.Wash.1985).  However, the Court must "subject the retrospectively created record to a more exacting scrutiny than [it] would bring to contemporaneous and detailed records." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir.1984).  Further, courts "frow[n] on block billing where discrete and unrelated tasks are lumped into one entry, as the practice can make it impossible . . . to determine the reasonableness of the hours spent on each task." *See Defenbaugh v. JBC & Associates, Inc.*, 2004 WL 1874978, at *9 (N.D. Cal. Aug. 10, 2004) (reducing hours billed for separate tasks billed as one entry).

Here, Plaintiff requests that her attorneys be compensated as follows: (1) 772.5 total hours for Mr. Hoffman (comprised of 684.5 hours for pretrial and trial work and 88 hours for time spent on the fees motion); (2) 9.5 hours for Josh Rosenthal; (3) 207.25 hours for Ms. Minger (comprised of 202.75 hours for pretrial and trial work and 4.5 hours for time spent on the fees motion); (4) 9.1 hours[21] for Ms. Youngmark; and (4) 272.60 hours for Ms. Camp.  In support of the requested hours, Plaintiff has provided the Court with statements – purportedly based on contemporaneous records – that show the hours billed over the course of the litigation. *See* Hoffman Decl. at Ex. 3, 4; Minger Decl. at Ex. A; Youngmark Decl. at p. 2.  The actual contemporaneous records, however, have not been provided.  Plaintiff has also failed to provide the Court with any documentation regarding Mr. Rosenthal's hours.  Instead, in the Hoffman Declaration, Mr. Hoffman avers that Mr. Rosenthal billed 9.5 hours on the case in relation to his attendance of the depositions of Dr. Lan Lui and Dr. Greer.  *See* Hoffman Decl. at ¶ 8.

Judge Chen recommends the following calculation of hours: (1) 772.2 hours for Mr. Hoffman; (2) 207.25 hours for Ms. Minger; (3) 9.5 hours for Mr. Rosenthal; (4) 8.8 hours for Ms. Youngmark; and (5) 104.85 hours for Ms. Camp.  Although Judge Chen agrees with GNC that time relating to Plaintiff's FEHA and unfair competition claims should be excluded due to the fact that such claims are sufficiently unrelated to Plaintiff's successful FMLA claim, Judge Chen concludes that GNC has not demonstrated that Plaintiff spent

---

[21]In her affidavit, Ms. Youngmark states that she worked 9.1 hours on this case.  However, Mr. Hoffman's affidavit states that Ms. Youngmark only worked 8.8 hours.  Mr. Hoffman's erroneous statement appears to have led Magistrate Chen to conclude that Plaintiff is only requesting compensation for 8.8 hours.

United States District Court

For the Northern District of California

any time pursuing her FEHA claims. Accordingly, the only time Judge Chen recommends excluding from the lodestar for Plaintiff's unsuccessful claims is a 0.3 hour time entry included in Mr. Hoffman's billing statement relating to Plaintiff's unfair competition claim.

GNC specifically objects to Judge Chen's recommendation and argues that the total hours must be reduced to account for time spent pursuing Plaintiff's frivolous FEHA and unfair competition claims. Because this is a specific objection to the report, the Court must review this portion of the report *de novo*. *See* Fed. R. Civ. P. 72(b).

Having reviewed Plaintiff's billing statements, the Court declines to adopt this portion of Judge Chen's report. Significantly, although Judge Chen concludes that, with respect to the hours billed by Mr. Hoffman and Ms. Minger, Plaintiff's documentation is sufficient to meet her preliminary burden of proof,[22] he also points out that Plaintiff: (1) has failed to address whether her attorneys have exercised "billing judgment"; and (2) has failed to offer evidence that her attorneys reduced specific hours for inefficiency.[23] Given the substantially poor detail provided by Mr. Hoffman, Ms. Minger, and Ms. Youngmark's billing statements, which consist of the type of "block billing" that is typically scorned by the courts, the Court finds that an "exacting" scrutiny of Plaintiff's requested hours is warranted. Further, Judge Chen's conclusion that Plaintiff's billing statements do not "reveal any overbilling or duplication in effort" is not supported by the record. The Court's analysis of Plaintiff's billing records is set forth below.

### 1.    Mr. Hoffman's Hours

With respect to Mr. Hoffman, Judge Chen recommends a finding that 684.5 hours for Mr. Hoffman's trial and pretrial work is reasonable. However, having reviewed the same records, the Court finds that many

---

[22]Because Judge Chen concludes that Plaintiff's preliminary burden of proof has been met, the majority of Judge Chen's report focuses on whether GNC has met its burden of proof with respect to its contention that Plaintiff's requested hours are unreasonable. However, the Court finds that Judge Chen should not have shifted the burden to GNC without first assessing the quality of Plaintiff's records and making the appropriate deductions.

[23]Although Mr. Hoffman states in his declaration that he did not bill for all of his trial time, Plaintiff provides no specific evidence that any hours have been deducted from the overall total. In fact, as set forth below, it is startlingly clear from even a cursory review of Plaintiff's billing statements that Plaintiff's attorneys have *not* exercised billing judgment.

United States District Court
For the Northern District of California

of Mr. Hoffman's time entries involve purely clerical work, are excessive for the work performed, are unnecessarily duplicative, or relate to inexcusable procedural errors that would not have been performed by "reasonably competent counsel" and should not be billed to one's client, much less one's opposing counsel. Thus, the Court finds that only 561.96 hours are reasonable and compensable. Specifically, the following hours must be eliminated:

| Date | Hours | Description |
|------|-------|-------------|
| 3/18/03 | 0.1 | "Review Case Management Scheduling Order For Reassigned Case: CMC changed to 7/23/2003, update calendar"[24] |
| 7/1/03 | 0.4 | "Review letter from Cooper regarding meet and confer to file for filing of a joint case management conference statement" |
| 7/3/03 | 1.6 | "Answer letter to Cooper regarding joint case management statement, meeting with Marilyn to discuss answer prior to her drafting correspondence, work on CMC issues" |
| 7/7/03 | 0.2 | "Review Joint Case Management Statement filed by GNC." |
| 7/11/03 | 0.4 | "Review Clerk's Notice re: Failure to E-File and/or Failure to Register as an E-Filer" |
| 7/14/03 | 2.1 | "Investigate and review E-Filing and Registration procedures and system"[25] |
| 7/15/03 | 0.3 | "Discuss with Minger CMC letter to Steve Danz advising him of our unavailability to attend case management conference, and request for court coverage from Danz and Gerber, call to client" |
| 7/29/03 | 3.5 | "Review Order to Show Cause, work on Declaration of R. Michael Hoffman in Response to Order to Show Cause re missed case management conference by Mercedes Navarro, continue work on case management statement"[26] |

---

[24]All of Plaintiff's time entries relating to the initial Case Management Conference, which was cancelled due to Plaintiff's counsel's failure to appear for the Conference, necessitating a further Case Management Conference and the drafting of a second Case Management Conference Statement, are unreasonable. Further, such time entries have nothing to do with Plaintiff's success on her FMLA claim.

[25]Billing for time spent learning the Court's e-filing procedures is questionable at best. It is manifestly unreasonable, however, in light of the fact that between Mr. Hoffman and Ms. Camp alone more than 6.6 hours were billed for this task, and Plaintiff's attorneys still failed to master the proper procedures. *See* Docket Nos. 14, 16, 23, 41, 341 (notices from the Court regarding Plaintiff's failure to e-file).

[26]It is not reasonable to bill GNC for time spent on sanction proceedings initiated by the Court against Plaintiff's counsel due to Plaintiff's counsel's failure to appear for the Case Management Conference.

19

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

| | | | |
|---|---|---|---|
| 8/10/03[27] | 1.3 | "Prepare Declaration in Response to Order to Show Cause re missed case management conference by Mercedes Navarro" | |
| 8/11/03 | 1.1 | "File Declaration re missed case management conference<br>Review Clerk's notice re: Failure to E-File regarding manually filed document OSC set aside.  Calendar Further Case Management Conference to be held on 10/16/2003 3:00 p.m. via telephone before Judge Armstrong. Review and calendar new deadlines." | |
| 10/17/03 | 1.8 | "Review and calendar notice of Scheduling Conference on 10/16/2003 before Judge Jury Trial set for 5 days on 3/22/2004 08:30 AM.  Motion cut-off deadline set for 2/3/2004.  Case management scheduled order of Discovery due by 1/16/2004 and Motions due by 2/3/2004 calendared.  Review notice of case referral to Magistrate Judge Edward M. Chen for Settlement, calendar, discussion with client 10/20/2003<br>Review notice of case referred to Mediation and calendar.  Final Pretrial Conference set for 3/9/2004 01:00 PM.  Calendar<br>Review notice of clerk's re: Plaintiff's Failure to E-File and/or Failure to Register as an E-Filer.  Perform E-Filing procedures, and Registration Training"[28] | |
| 10/28/03 | 1.0 | "Review and calendar Court order re- Notice of Settlement Conference and Settlement Conference Order.   Confirm Settlement Conference set for 1/15/2004 at 09:30 AM"[29] | |
| 2/8/04 | 1.0 | "Prepare Declaration of R. Michael Hoffman Motion to continue trial date"[30] | |
| 4/4/4 | 0.3 | "Review email and attachment from Marilyn regarding Unfair Competition."[31] | |

[27]On the actual exhibit, this entry is erroneously stated as August 10, 2004 but it appears to actually be referring to August 10, 2003.

[28]Although there is one entry that appears to be non-clerical – *i.e.* "discussion with client" – Mr. Hoffman makes no effort to identify the amount of time that was allotted to this task.  The rest of the entries are either clerical, duplicative, or unnecessary, and therefore unreasonable.

[29]That Mr. Hoffman spent one hour confirming a settlement conference date and placing it on his calendar defies credibility.  Accordingly, this time entry is unreasonable and is excluded.

[30]The declaration that Mr. Hoffman is referring to in this time entry states in its *entirety*: "I, R. Michael Hoffman, am an attorney of record in this action.  Plaintiff is completely ready for trial.  Her expert has been scheduled.  This is a simple 3-4 case [*sic*].  Discovery is proceeding along based upon the agreement of the parties.  No judicial intervention is required.  Plaintiff does not agree to a continuance.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct an that this declaration was executed at San Francisco, California, on February 1, 2004."  Taking **one hour** to draft an eight-sentence declaration is unreasonable.  Further, the Court notes that the date of the sworn declaration is February 1, 2004, but, curiously, Mr. Hoffman is claiming that he drafted this declaration on February 8, 2004.

[31]This time entry was appropriately excluded by Magistrate Judge Chen as relating to Plaintiff's unsuccessful unfair competition claim.

20

| 5/24/04 | 15 | "Jury Trial.  Review Motion for Judgment as a Matter of Law filed by GNC, work on opposition.  Review Proposed Jury Instructions by GNC, |
| | 15 | Jury Trial.  Review Brief re GNC's Further Citations in Support of GNC's Proposed Jury Instruction No. 34."[32] |
| 5/25/04 | 15 | "Review of Proposed Form of Verdict by GNC Joint Verdict Form - - Both Parties"[33] |

TOTAL          60.1 Hours

In addition to the specific time entries noted above, Mr. Hoffman's billing statement contains several block entries that include non-billable clerical or duplicative work, work performed on the FEHA and unfair competition claims, or work that served no legitimate purpose and unnecessarily prolonged the proceedings. For example,[34] on January 26, 2004, Mr. Hoffman spent 0.5 hours scheduling depositions, but also billed time for a "review[ing] letter and proposed order from Leverett regarding stipulation to an order dismissing Lorraine Crisp from lawsuit."  Inexplicably, Mr. Hoffman never filed the stipulation, despite the fact that Defendants understood that he had agreed to do so.  Additionally, on April 13, 2004, Mr. Hoffman billed 4.5 hours for work relating to reviewing Defendants' objections to Plaintiff's summary judgment evidence, but also included in this entry is the time Mr. Hoffman spent reviewing Defendants' objection to Plaintiff's Separate Statement of Undisputed Material Facts, which was filed in violation of this Court's standing orders.  Mr. Hoffman's April 27, 2004 time entry also suggests that he billed time relating to Defendants' motion in limine to preclude evidence about discrimination based upon race and/or religion filed by GNC.

Since Mr. Hoffman has "block billed," it is impossible for the Court to parse out a specific amount of hours that should be excluded from these time entries.  Accordingly, the Court hereby reduces Mr. Hoffman's remaining hours by ten percent to further eliminate any unbillable hours that have been inappropriately included in Mr. Hoffman's block billing.  This results in a total of 561.96 hours for pretrial and trial work.

With respect to Mr. Hoffman's requested hours relating to the fees motion, Judge Chen recommends

---

[32]That Mr. Hoffman has billed thirty (30) hours in one day is shocking and completely unreasonable.

[33]This time entry is not reasonable in light of the fact that Mr. Hoffman has admitted to the Court that he committed an error in drafting the verdict form that substantially curtailed the amount of relief Plaintiff purportedly could have recovered for her claims.

[34]The following examples are provided by way of illustration, only, and are not meant to be exhaustive.

United States District Court

For the Northern District of California

1  a finding that 88 hours for work performed on the fees motion is reasonable. However, due to the fact that the

2  documentation Mr. Hoffman has submitted to the Court is inadequate in many regards, and the fact that Judge

3  Chen noted at the fee petition hearing that the briefing submitted by both parties was fairly poor,[35] the Court

4  does not agree that 88 hours is reasonable. Accordingly, the Court hereby adjusts the hours downward to 40,

5  which the Court finds to be a fair estimate of the amount of time it would have taken reasonably competent

6  counsel to adequately research and brief the fees motion.

7                    **2.    Ms. Minger's Hours**

8         With respect to Ms. Minger, Judge Chen recommends a finding that 207.25 hours for Ms. Minger's

9  trial and pretrial work is reasonable. However, in many regards, Ms. Minger's billing statements lack the type

10  of specificity that is typically required of fee applicants. For example, all of Ms. Minger's entries relating to the

11  trial merely state "Attendance at trial." It is also apparent that Ms. Minger billed for time spent on tasks that

12  are purely clerical in nature. Having reviewed Ms. Minger's billing statement closely, the Court finds that the

13  following hours must be eliminated:

| Date | Hours | Description |
|------|-------|-------------|
| 07/02/03 | 0.25 | "Telephone conference with Allison Lane Cooper re joint case management statement"[36] |
| 7/03/03 | 1.50 | "Telephone conference with Allison Lane Cooper re joint case management statement; meeting with M. Hoffman re case management statement; email to Allison Cooper re same" |
| 7/15/03 | 0.50 | "Letter to S. Danz re case management conference" |
| 10/06/03 | 0.83 | "Prepare case management statement" |
| 4/20/04 | 0.75 | "Receive training on filing electronically with court."[37] |

---

[35] *See* October 27, 2004 Tr. at 7:13-14 (The Court: "Frankly the briefing on all sides of this has been pretty poor, I'll tell you that right now.")

[36] Again, Plaintiff's time entries relating to the initial Case Management Conference, which was cancelled due to Plaintiff's counsel's failure to appear for the Conference, are unreasonable and are therefore excluded.

[37] This is yet another unreasonable entry relating to Plaintiff's counsel's attempt to learn the e-filing system.

United States District Court

For the Northern District of California

1    4/20/04       1.50     "Convert documents to PDF and file with court"[38]

2    TOTAL:        5.33

3        Additionally, like Mr. Hoffman, it appears that Ms. Minger performed some work on frivolous or

4    unmeritorious claims and also performed work that served no legitimate purpose and unnecessarily prolonged

5    the proceedings.  For example, on April 4, 2004, Ms. Minger billed 16.42 hours for work that included a

6    "conference with Mr. Hoffman re infair [sic] competition and document production."  Ms. Minger also billed

7    a substantial amount of time in early April 2004 relating to Plaintiff's opposition to Defendants' Motion for

8    Summary Judgment.  While the majority of this time is compensable, some of it likely included work spent on

9    Plaintiff's untimely "cross-motion" which was ultimately stricken by the Court.  The vagueness of Ms. Minger's

10   billing statement limits the Court's ability to parse out specific hours relating to this type of work.  Accordingly,

11   Ms. Minger's total hours are hereby reduced by ten percent.  Thus, the total amount of hours for Ms. Minger's

12   pretrial and trial work is 177.67.

13       With respect to the work spent on the fees motion, Ms. Minger claims to have billed 4.5 hours.  This

14   is reasonable and is therefore included in the total amount of hours for Ms. Minger.

15               **3.    Mr. Rosenthal's Hours**

16       With respect to Mr. Rosenthal, Judge Chen recommends a finding that 9.5 hours is reasonable.

17   However, the Court finds that all of Mr. Rosenthal's hours must be excluded, since absolutely no documentation

18   relating to these hours has been submitted to the Court.  *Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir.

19   1993) (holding that it is an abuse of discretion to award fees for hours not properly documented).

20               **4.    Ms. Youngmark's Hours**

21       With respect to Ms. Youngmark, Judge Chen recommends a finding that 8.8 hours is reasonable.[39]

22   Ms. Youngmark's billing statement, however, is so general and vague that it provides the Court with almost no

23

24   _____

25   [38]As this entry relates to purely clerical work and is excessive, it is unreasonable and therefore
     excluded.

26       [39]Again, the Court notes that Ms. Youngmark's billing statement actually reflects a total of 9.1 hours
     worked.  Judge Chen appears to be referring to Mr. Hoffman's affidavit, which states that Ms. Youngmark only
27   billed 8.8 hours.

28                                        23

guidance whatsoever.  Having examined Ms. Youngmark's billing statement closely, the Court finds that the following hours must be excluded:

| Date | Hours | Description |
|------|-------|-------------|
| 2/14/03 | 0.50 | "Prepare Motion to Withdraw and Proposed Order"[40] |
| 2/22/03 | 0.30 | "Revisions to Complaint"[41] |
| 2/27/03 | 0.20 | "Additional revisions to Complaint" |
| 2/13/04[42] | 0.30 | "Prepare Stipulation / Order re Dismissal of Action Without Prejudice" |
| TOTAL: | 1.3 Hours | |

Further, for the most part, the remainder of Ms. Youngmark's time entries merely state that Ms. Youngmark performed "legal research" generally, or "legal research re opposition to alleged unlawful employment practices and retaliation."  Again, because these descriptions are so nebulous, the Court is limited in its ability to exclude specific time spent on unrelated, unmeritorious claims.  Accordingly, Ms. Youngmark's time is hereby reduced by ten percent.  The remaining amount of compensable hours is 7.02.

### 5.    Ms. Camp's Hours

With respect to Ms. Camp's billing statement, Judge Chen recommends a finding that only 104.85 out of the total 272.6 hours requested is compensable.  Judge Chen appears to have appropriately scrutinized Ms. Camp's billing records and excluded hours spent on purely clerical tasks, such as saving PDF files (a task which has purportedly consumed roughly 60 hours of Ms. Camp's time).  The Court therefore concurs with Judge Chen that the following hours are not reasonable:

Date            Hours    Description

---

[40]As far as the Court can ascertain, no such motion was ever filed in this case.  Further, the hours expended on this motion have nothing to do with Plaintiff's success on her FMLA claim.

[41]An amended complaint was never filed.  As such, these hours do not appear to relate, in any way, to Plaintiff's success on her FMLA claim and are therefore unreasonable.

[42]Although the statement provided by Ms. Youngmark refers to this date as February 13, 2003, it appears to actually be referring to work performed in 2004.

24

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

| | | |
|---|---|---|
| 7/11/03 | 1.5 | "Investigate and review E-Filing and Registration procedures and system"[43] |
| 10/20/03 | 3.0 | "Introduce E-filing procedures to Hoffman and Minger." |
| 1/04 | 20 | "File maintenance for month of January" |
| 2/04 | 20 | "File maintenance for month of February" |
| 3/04 | 20 | "File maintenance for month of March" |
| 4/04 | 20 | "File maintenance for month of April" |
| 5/04 | 20 | "File maintenance for month of May" |
| TOTAL: | 104.5 | |

In addition, the majority of Ms. Camp's billing statement consists of "block" entries that inappropriately include both billable and non-billable hours. Because the Court is unable to separate the billable from the non-billable, and because the amount of non-billable work Ms. Camp performed appears to be quite substantial, Judge Chen's recommendation that the total amount of hours requested be reduced by fifty percent is appropriate. Accordingly, the Court finds that only 104.85 hours for Ms. Camp shall be included in the lodestar.[44]

**C.    Final Lodestar**

In conclusion, the Court partially rejects Judge Chen's recommended lodestar calculation and adopts, instead, the following lodestar calculation:

---

[43]As noted above, hours relating to Plaintiff's counsel's efforts to learn the Court's e-filing procedures are not reasonable, especially since these efforts do not appear to have improved Plaintiff's compliance with the Court's rules regarding e-filing. Further, these hours are excessive and duplicative of hours purportedly billed by Mr. Hoffman and Ms. Minger.

[44]This amount includes the 8.0 hours Ms. Camp billed for work on the fees motion.

United States District Court

For the Northern District of California

| NAME | APPROVED HOURLY RATE | REQUESTED HOURS | APPROVED HOURS | AMOUNT |
|------|------|------|------|------|
| Michael Hoffman | $190 | 772.20 | 601.96 | $114,372.40 |
| Josh Rosenthal | $150 | 9.50 | 0 (hours not properly documented) | $0 |
| Marilyn Minger | $150 | 207.25 | 182.17 | $27,325.50 |
| Geraldine Camp | $65 | 272.60 | 104.85 | $6,815.25 |
| Katie Youngmark | $65 | 9.10 | 7.02 | $456.30 |
| TOTAL LODESTAR | | | | $148,969.45 |

### D.       Adjustments to the Lodestar

In computing an award of fees under *Hensley,* the Court must perform a two-part analysis.  *Hensley*, 461 U.S. at 434.  Under the first part of the analysis, the Court must ask whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims.  *Id.*  If unrelated, the final fee award may not include time expended on the unsuccessful claims.  *Id.*  This Court has already excluded the time spent on Plaintiff's unsuccessful FEHA and unfair competition claims, which are the only claims that GNC argues are unrelated to Plaintiff's FMLA cause of action.  *See Hensely*, 461 U.S. at 434 (unsuccessful claims are "unrelated" if they involve "distinctly different claims for relief that are based on different facts and legal theories.").  Accordingly, the Court proceeds to the next step in the analysis, which is whether an adjustment to the lodestar is warranted.

If there are unsuccessful and successful claims that are related, under the second part of the analysis, the Court must evaluate the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435.  If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive and the lodestar should be reduced.  However, when an adjustment is made on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the Court must make clear that it has

United States District Court

For the Northern District of California

considered the relationship between the amount of the fees awarded and the results obtained. *Hensley*, 461 U.S. at 437. Additionally, the Court must not hesitate to reduce the lodestar computed when the result obtained is the product of an unnecessarily extended proceeding. *See Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 118 (3rd. Cir. 1976); *In re Equity Funding Corp. of America Securities Litigation*, 438 F. Supp. 1303, 1328 (C.D. Cal. 1977).

In her Motion for Attorney's Fees, Plaintiff contends that her lodestar should be enhanced by a multiplier of 2.0 (or two hundred percent) because "it was apparent to Plaintiffs [*sic*] counsel [when he decided to take this case] that this case would be more difficult than other employment discrimination matters he had handled for several reasons." *See* Mot. at 14:1-2. Plaintiff alleges that the following factors made the case "more difficult": (1) it was a lawsuit against a large corporation; (2) Plaintiff would have to prove that GNC's FMLA policies and procedures towards Plaintiff were unfair; and (3) the effect of the application of the disability laws, and whether Plaintiff was qualified under the FMLA, were "novel" issues. GNC, on the other hand, argues that Plaintiff's lodestar should be *reduced* by fifty percent in order to account for Plaintiff's limited success.

As GNC correctly notes in its Motion for *De Novo* Determination, it is beyond dispute that Plaintiff's "success" in the litigation was, in fact, quite limited. Specifically:

- Plaintiff prevailed only on her FMLA interference claim and not on any of her other related claims, including FMLA retaliation, CFRA interference, and CFRA retaliation;

- Plaintiff requested an award of $665,500 from the jury, but only received an award of $60,500 in back pay.

- Plaintiff did not recover front pay or future wages;

- Plaintiff did not recover emotional distress damages;

- Plaintiff did not obtain reinstatement or other injunctive relief; and

- Plaintiff did not recover punitive damages.

Based on these undisputed facts, Plaintiff's request for an upward adjustment to the lodestar is unwarranted. Indeed, the factors that Plaintiff identifies in support of the requested multiplier are the type of

27

United States District Court
For the Northern District of California

general, vague statements that apply to virtually every employment case. Accordingly, the appropriate focus of this inquiry is whether the lodestar should be reduced and, if so, by how much.

Judge Chen recommends a thirty-five percent reduction to the lodestar, given the fact that the relief Plaintiff obtained was short, both quantitatively and qualitatively, of what she sought in the litigation. In its Motion for *De Novo* Determination, GNC requests that the Court reject the Magistrate's recommendation and, instead, reduce Plaintiff's lodestar by at least fifty percent. GNC does not, however, provide the Court with any relevant or analogous authorities in support of its contention that a fifty percent reduction is appropriate. For example, in *Williams v. Mensey*, 785 F.2d 631, 640 (8th Cir. 1986), the plaintiff prevailed on one claim and was awarded nominal damages of $1.00. *Id.* Accordingly, the court awarded the plaintiff only ten percent of the fees requested. *Id.* In contrast, here, although the damages that Plaintiff received were not significant in light of her expectations and settlement demands, she receive more than mere "nominal" damages. Also, in *Harris v. Marhoefer*, 24 F.3d 16, 17-18 (9th Cir. 1994), where the lodestar was reduced by fifty percent, the plaintiff obtained a judgment of $25,000 against one defendant out of the $5 million requested. *Id.* Plaintiff's success in this case was not nearly as limited as the plaintiff's success in *Harris*.

However, under *Hensley*, the Court is required to consider the relationship between the amount of the fees awarded and the results obtained, and whether the fees incurred resulted from proceedings which were unnecessarily protracted. *Hensley*, 461 U.S. at 437. Here, given that Plaintiff received $60,500 in damages, and considering that some of the fees incurred were the result of unnecessarily extended proceedings, including the fact that the case was initially scheduled to go to trial in March 2004, the Court finds that a forty percent reduction is appropriate. *See Lindy Bros. Builders, Inc.*, 540 F.2d at 118; *In re Equity Funding Corp. of America Securities Litigation*, 438 F. Supp. at 1328. Reducing the lodestar by forty percent results in a final lodestar of $89,831.67. Accordingly, the Court modifies the Magistrate's recommended fee reduction of thirty-five percent to **forty percent** and hereby awards Plaintiff fees in the amount of $89,381.67.

United States District Court

For the Northern District of California

### E.      Award of Costs

Finally, with respect to Plaintiff's requested costs, Judge Chen notes that Plaintiff has improperly requested $9,374.88 in statutory costs that have already been taxed by the Clerk of Court pursuant to 28 U.S.C. § 1920.  However, Judge Chen concludes that Plaintiff may properly be awarded certain expert witness fees and travel costs under the fee shifting provision of the FMLA.[45]

After considering Plaintiff's evidence in support of her request, Judge Chen concludes that Plaintiff is entitled to recover $4,350 as reimbursement for certain expert witnesses, and $2,200.24 as reimbursement for certain travel costs.  However, Judge Chen also concludes that, due to Plaintiff's limited success in the litigation, a thirty-five percent reduction of these costs is warranted as well.  Accordingly, Judge Chen recommends an award of $4,257.66 in costs.

Neither party has objected to Judge Chen's recommended award of costs, although GNC has objected to the overall lodestar reduction recommended by Judge Chen.  Since the Court has modified Judge Chen's recommended thirty-five percent reduction to a forty percent reduction, the awarded costs must be reduced accordingly.  Thus, Plaintiff is awarded costs in the amount of $3,930.14

### F.      Total Fee and Cost Award to Plaintiff.

In sum, having made certain modifications to Judge Chen's recommendations, the Court hereby awards Plaintiff attorney's fees and costs in the total amount of $93,311.81.

## II.      GNC's Motion for Attorney's Fees

In GNC's Motion for Attorney's Fees, GNC requests an award of attorney's fees in the total amount of $494,386.00.  GNC contends that it is entitled to an award of fees on the following grounds: (1) GNC was the prevailing party on Plaintiff's FEHA claims; (2) an award of fees is an appropriate sanction pursuant to 28 U.S.C. § 1927[46] because Plaintiff's attorneys unreasonably and vexatiously multiplied the proceedings by

---

[45]The FMLA statute expressly provides that, "in addition to any judgment awarded to the plaintiff, . . . a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a).

[46]28 U.S.C. § 1927 provides that: "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys'

United States District Court

For the Northern District of California

1   pursuing frivolous claims and engaging in misconduct during trial; and (3) an award of fees is an appropriate

2   sanction pursuant to Federal Rule of Civil Procedure 11 because Plaintiff's attorneys violated Rule 11 by

3   including meritless FEHA and unfair competition claims in Plaintiff's Complaint.  Alternatively, GNC requests

4   that the Court award it, at a minimum, attorney's fees in the amount of $186,454.00 (one-third of its purported

5   lodestar amount), pursuant to the Court's inherent powers, to compensate GNC for the fees it incurred

6   responding to Plaintiff's allegedly sanctionable conduct.  Plaintiff opposes GNC's Motion on the grounds that

7   GNC is requesting an extreme sanction that should only be granted in particularly egregious cases of

8   misconduct.  Plaintiff does not object, however, to GNC's lodestar calculation.

9        In his Report and Recommendation, Judge Chen does not perform a lodestar calculation for GNC.

10   Instead, he recommends denying GNC's Motion in its entirety.  Since GNC has objected to this portion of the

11   report, however, the Court must conduct a *de novo* review in order to determine whether GNC is entitled to

12   an award of fees under any of its theories of recovery.

13        **A.        The Prevailing Party on Plaintiff's FEHA Claims**

14        GNC first asserts that it is entitled to attorney's fees as the prevailing party on Plaintiff's FEHA race

15   discrimination and medical condition claims.  Under FEHA, GNC may recover attorney's fees as the prevailing

16   party if the Court finds that Plaintiff's FEHA claims were frivolous, unreasonable, or without foundation, even

17   if the claim was not brought in subjective bad faith.  *See* Cal. Gov. Code § 12965(b); *Moss v. Associated*

18   *Press*, 956 F. Supp. 891, 893 (C.D. Cal. 1996) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S.

19   412, 420-22 (1978)).  An award of attorney's fees to the prevailing defendant is particularly appropriate where

20   a plaintiff continues to litigate a FEHA claim after the plaintiff knew, or should have known, that the claim was

21   unreasonable or without foundation.  *See Moss*, 956 F. Supp. at 895.

22        Here, Plaintiff initially asserted in her Complaint that GNC violated FEHA by discriminating against her

23   based on her race and "medical condition."  However, Plaintiff's counsel, Mr. Hoffman, admits that he knew,

24   from the outset of the litigation, that her race discrimination was baseless.  Nevertheless, Mr. Hoffman refused

25   to acknowledge that the FEHA race discrimination claim should be dropped until January 27, 2004, when he

26   _____

27   fees reasonably incurred because of such conduct."

28                                                    30

signed a stipulation indicating that Plaintiff would no longer pursue the claim. Despite the fact that this stipulation was signed, however, Mr. Hoffman did not immediately dismiss the claim from the Complaint, causing GNC to have to file a motion in limine during the pretrial conference aimed at Plaintiff's race discrimination allegations. Additionally, there was no foundation for Plaintiff's "medical condition" claim, since Plaintiff – and Plaintiff's counsel – were both aware of the fact that Plaintiff was not suffering from cancer or a genetic defect. This issue also unnecessarily consumed time during the litigation. For example, during trial, GNC was forced to respond to Plaintiff's belated, and ultimately unsuccessful, motion to amend the Complaint to substitute the meritless "medical condition" claim for a "physical disability" claim. Based on this history, it is beyond dispute that Plaintiff's FEHA claims were frivolous and without foundation. Accordingly, the Court agrees with Judge Chen that GNC has made a preliminary showing that fees are warranted under FEHA. The Court does not, however, concur with Judge Chen's conclusion that GNC is not entitled to attorney's fees merely because it cannot specifically identify every time entry that relates to GNC's defense of the FEHA claims.

To the contrary, the Court finds that GNC has complied with *Hensley* by providing very detailed, contemporaneous time records reflecting all of the attorney hours spent on the litigation. GNC has also provided the Court with background information concerning the two lead attorneys, including their *curricula vitae*, as well as biographical information relating to the associates staffed on the matter. Based on the information provided by Defendants, including the Declaration of Kenneth E. Keller, the Supplemental Declaration of Kenneth E. Keller, and the Declaration of G. Daniel Newland[47], and based on the Court's own observation of GNC's counsel's conduct throughout the pretrial proceedings and trial, the Court finds that GNC has established its preliminary burden of proof with respect to the applicable billing rates. Moreover, Plaintiff does not object to GNC's requested billing rates. Accordingly, the Court finds the following hourly rates to be reasonable: (1) $225 per hour for all trial work performed by Mr. Holland and $275 per hour for the pretrial work; (2) $275 per hour for Mr. Keller; (3) $200 per hour for Ms. Kearns; and (4) $200 per hour for Ms.

---

[47]Mr. Newland is a partner at Seyfarth Shaw LLP, and thus is a disinterested party.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Kang.[48]

2          With respect to the hours spent on Plaintiff's FEHA claims, the Court does not agree with Judge Chen's

3    conclusion that no time was spent on these claims.  To the contrary, it is apparent that time was spent defending

4    against these claims, particularly in light of the fact that GNC has shown that it worked quite diligently toward

5    getting the claims dismissed from the lawsuit.  However, the Court finds that GNC's contention that it is entitled

6    to a fee award of $60,161.22 (consisting of 2/9 of the fees incurred up through January 27, 2004 and 1/9 of

7    the fees incurred from January 27, 2004 through May 27, 2004) is unwarranted and is not supported by any

8    direct references to any actual time entries in GNC's billing statements.  Having reviewed GNC's billing records,

9    the Court has identified the following time entries as being related to Plaintiff's FEHA claims:

| Date | Hours | Timekeeper | Description |
|------|-------|-----------|-------------|
| 1/27/04 | 3.8 | Holland | ". . . Extended telephone conference with opposing counsel Hoffman regarding upcoming depositions, other discovery issues, stipulation regarding grounds for Navarro claims, and related matters.  Correspond with G. Kelly regarding same . . . Correspond with opposing counsel Hoffman regarding stipulation eliminating grounds for Navarro claims, and related matters . . . "[49] |
| 4/22/04 | 5.50 | Kearns | ". . . continue drafting motion in limine regarding excluding evidence about race discrimination . . ." |
| 5/26/04 | 15.50 | Kearns | ". . . begin drafting oppositions to plaintiff's motions (to amend, for judgment, objection to request for judicial notice) . . ."[50] |
| 5/26/04 | 12.20 | Keller | "Prepare for closing, sixth day of trial.  Argue motions and jury instructions . . . "[51] |

20          Additionally, it appears that Ms. Kang spent a total of 14.2 hours conducting research regarding the

---

[48]The Court finds that compensating GNC's counsel at higher rates than Plaintiff's counsel is appropriate and supported by the Court's own observations and assessment of all of the attorneys performing work on this case.

[49]Given the timing of this entry, the Court concludes that the entry relates to GNC's efforts to have Plaintiff dismiss her race discrimination claim from the lawsuit.

[50]This time entry relates to Plaintiff's motion to amend the Complaint, which is directly related to Plaintiff's "medical condition" FEHA claim.

[51]The Court concludes that this time entry also relates to Plaintiff's "medical condition" FEHA claim.

legal sufficiency of all of the causes of action in Plaintiff's Complaint and preparing a memorandum summarizing her conclusions. Quite obviously, part of this analysis necessarily included Plaintiff's FEHA claims. Since some of the time entries noted above include work that is unrelated to Plaintiff's FEHA claims, however, not all of the time is appropriately included in the lodestar calculation, and therefore a downward adjustment is necessary. The Court finds that a reasonable estimate is that: (a) Mr. Holland spent approximately 2.5 hours corresponding with Mr. Hoffman to reach a stipulation regarding the race discrimination claim; (b) Ms. Kearns spent 4.0 hours drafting a motion in limine excluding Plaintiff's race discrimination claims and 4.0 hours responding to Plaintiff's motion to amend her complaint to add physical disability claims under FEHA; (c) Mr. Keller spent 0.5 hours responding to Plaintiff's motion in Court; and (d) Ms. Kang spent 1.5 hours analyzing Plaintiff's frivolous FEHA claims.

The total lodestar for GNC is therefore:

| Attorney | Hours | Rate | Fees |
|----------|-------|------|------|
| Mr. Keller | 0.5 | $275 | $137.50 |
| Mr. Holland | 2.5 | $275 | $687.50 |
| Ms. Kearns | 8.0 | $200 | $1,600.00 |
| Ms. Kang | 1.5 | $200 | $350.00 |
| | | TOTAL: | $2,775.00 |

Accordingly, GNC is awarded attorney's fees in the amount of $2,775.00, which amount shall be offset from Plaintiff's award of attorney's fees.

**B.      Sanctions Under 28 U.S.C. § 1927**

GNC also contends that it should be awarded fees in the amount of at least $110,497.30 (1/3 of the purported lodestar amount) pursuant to 28 U.S.C. § 1927. Section 1927 provides in relevant part that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. To be sanctioned pursuant to § 1927 in the Ninth Circuit, the attorney must

United States District Court

For the Northern District of California

33

United States District Court
For the Northern District of California

1   have acted recklessly or in bad faith. *See United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983).[52]

2   The frivolousness of a claim or argument does not by itself justify an award of sanctions under § 1927; the

3   additional element of wrongful purpose is required. *See Cinquini v. Donahoe*, 1996 WL 79822 *8 (N. D.

4   Cal. 1996).  Ignorance, negligence, incompetence, or even a basic lack of professional courtesy do not

5   constitute "bad faith." *Cruz v. Savage*, 896 F.2d 626, 630 (1st Cir. 1990).

6        GNC argues that it is entitled to fees under § 1927 because Plaintiff's counsel engaged in the following

7   acts of litigation misconduct: (1) failing to appear for the initial Case Management Conference; (2) refusing to

8   provide the required damage and witness disclosures pursuant to Federal Rule of Civil Procedure 26; (3)

9   refusing to supplement the damage and witness disclosures pursuant to Federal Rules of Civil Procedure 26

10   and 33; (4) refusing to identify Plaintiff's previous medical and psychological care providers despite Defendants'

11   multiple discovery requests; (5) improperly withdrawing Plaintiff's consent to the release of medical files relating

12   to the litigation; (6) terminating Plaintiff's deposition only seventeen days before trial was set to commence; (7)

13   consistently arriving late to Plaintiff's March 30, 2004 and April 30, 2004 depositions; and (8) withdrawing or

14   refusing to acknowledge numerous stipulations reached between the parties that were intended to eliminate

15   frivolous claims and to streamline the case.  Defendants also contend that Plaintiff's counsel vexatiously

16   multiplied the proceedings by pursuing frivolous claims and by filing frivolous discovery motions relating to those

17   claims.

18        Despite GNC's litany of complaints about Plaintiff's counsel, and Mr. Hoffman in particular, GNC has

19   only demonstrated – at best – that Plaintiff's counsel acted negligently or  incompetently.  There is no evidence,

20   however, that Plaintiff's counsel acted with an improper purpose or with bad faith.  Indeed, although it is

21   disappointing that Mr. Hoffman failed to dismiss the patently frivolous race discrimination claim from the case,

22   it is relevant to this analysis that Mr. Hoffman did not make any effort to oppose Defendants' dismissal of the

23   claim during the pretrial conference.  Similarly, with respect to the frivolous medical condition FEHA claim, it

24   appears that Mr. Hoffman's inclusion of this claim in the lawsuit resulted from a misreading of the relevant

25

26

27        [52]The statute, by its terms, applies exclusively to attorneys.  *See Travelers Ins. Co. v. St. Jude Medical Office Bldg.*, 154 F.R.D. 143, 144 (E.D. La. 1994).

28                                 34

United States District Court

For the Northern District of California

statute, and not from malice. While the Court does not condone this type of carelessness, the Court also finds that Mr. Hoffman's actions do not rise to the level of sanctionable conduct that § 1927 contemplates. Finally, with respect to any discovery disputes that were serious enough to have been brought to the Court's attention during the underlying proceedings, the Court has already considered, and denied, GNC's request for sanctions. Accordingly, the Court hereby denies GNC's current motion for sanctions under § 1927.

### C.    Rule 11 Sanctions

GNC also argues that it should be awarded attorney's fees as a sanction pursuant to Federal Rule of Civil Procedure 11. Rule 11(b) provides in pertinent part that:

> [b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --
> (1) it is not being presented by any improper purpose . . .
> (2) the claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b). Further, Rule 11(c) provides that a Court may sanction an attorney and/or a party for violating subdivision (b). Fed. R. Civ. P. 11(c). "Courts must apply an objective test in assessing whether the rule has been violated." *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993). However, "[a] violation of the rule does not require subjective bad faith." *Id.*

GNC contends that Plaintiff and her attorneys violated Rule 11(b) by including frivolous FEHA and unfair competition claims in her Complaint and by filing a frivolous motion to compel. In his report, Judge Chen finds that sanctions under Rule 11 are not warranted because GNC failed to comply with the procedural requirements of the "safe harbor" provision of the rule. *See* Fed. R. Civ. P. 11(c) (providing that a motion for sanctions may not be presented to the Court unless, within 21 days after service of the motion, the challenged pleading is not withdrawn or corrected). While it is apparent that Plaintiff's counsel and Defendants' counsel engaged in several conversations concerning Plaintiff's FEHA and unfair competition claims, Defendants'

counsel never filed a Rule 11 motion with the Court.  Accordingly, Judge Chen reached the appropriate conclusion that Rule 11 sanctions are inappropriate.  Further, with respect to Plaintiff's motion to compel, GNC has not effectively shown that the motion was frivolous or presented for an improper purpose.  *See* R&R at pp. 38-40.  Accordingly, the Court declines to exercise its discretion to award fees pursuant to Rule 11.

### D.      Sanctions Pursuant to the Court's Inherent Powers

Last, GNC requests that the Court award sanctions under its inherent powers.  The Ninth Circuit provides that sanctions pursuant to a Court's inherent powers "are available if the court specifically finds bad faith or conduct tantamount to bad faith." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1108 (9th Cir. 2002). "[A] finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Id.* at 992.  Here, however, GNC has not provided any evidence that Plaintiff's counsel's actions were motivated by vindictiveness or bad faith.  Accordingly, the Court declines to exercise its discretion to sanction Plaintiffs' counsel.

## CONCLUSION

IT IS HEREBY ORDERED THAT Defendant's Motion for a *De Novo* Determination [Docket No. 332] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED THAT GNC's Motion for Attorney's Fees [Docket No. 296] is GRANTED IN PART AND DENIED IN PART.  GNC is hereby AWARDED attorney's fees award in the amount of $2,775.00.

IT IS FURTHER ORDERED THAT Plaintiff's Motion for Attorney's Fees [Docket No. 293] is GRANTED IN PART AND DENIED IN PART.  Plaintiff is hereby AWARDED attorney's fees and costs in the amount of $93,311.81, which shall be offset by GNC's award of attorney's fees.

IT IS SO ORDERED.

*Saundra B Armstrong*

Dated: 9-20-05                                    _____

SAUNDRA BROWN ARMSTRONG
United States District Judge

36